**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**(PHILADELPHIA)**

| | | |
|---|---|---|
| **IN RE:**<br>**TODD A BROWN, JR.,**<br><br>**DEBTOR.**<br><br><br>**MCLP ASSET COMPANY, INC,**<br><br>**MOVANT.**<br><br>**TODD A BROWN, JR, DEBTOR, AND**<br>**KENNETH E. WEST, TRUSTEE,**<br><br>**RESPONDENTS.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO.: 26-12084-DJB**<br>**CHAPTER 13**<br>**JUDGE DEREK J BAKER** |

**MOTION OF MCLP ASSET COMPANY, INC. FOR RELIEF FROM AUTOMATIC STAY UNDER § 362**

1. Movant is MCLP Asset Company, Inc.
2. Debtor is the owner of the property described as 7449 Ruskin Road, Philadelphia, Pennsylvania 19151 (hereinafter the "Property").
3. Movant is the holder of a Mortgage, with an original principal amount of $142,373.00 on the mortgaged premises, that was executed on June 29, 2017. Said mortgage was recorded on July 3, 2017 as Instrument No. 53233073. Documentation provided is in support of right to seek a lift of stay and foreclose if necessary.
4. Kenneth E. West is the Trustee appointed by the Court.
5. As of August 6, 2026, Debtor has failed to make the monthly payments for the months of June 1, 2026 through August 1, 2026, in the amount of $1,750.56 each, for a total arrearage of $5,251.68.
6. As of August 6, 2026 the principal balance owed is $150,774.04.

7. In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant will also incur $1,350.00 in legal fees and $199.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

8. Movant is entitled to relief from stay for cause.

9. Movant further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. Movant may contact Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be non-recourse unless included in a reaffirmation agreement.

10. This motion and the averments contained therein do not constitute a waiver by Movant of its right to seek reimbursement of any amounts not included in this motion, including fees and costs, due under the terms of the mortgage and applicable law.

11. Fay Servicing, LLC services the underlying mortgage loan and note for the property referenced in this motion for Movant. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.

WHEREFORE, Movant prays that an Order be entered modifying the Stay and permitting Movant to proceed with its mortgage foreclosure on the mortgaged premises, and

to allow the Sheriff's Grantee to take any legal action to enforce its right to possession of the mortgage premises. Further, Movant prays that an Order be entered awarding Movant the costs of this suit, reasonable attorney's fees in accordance with the mortgage document and current law together with interest.

Dated: September 1, 2026 Respectfully Submitted,

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq.
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
josh.goldman@padgettlawgroup.com
*Counsel for Movant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the parties on the attached Service List by electronic notice and/or by First Class U.S. Mail on this 1st day of September 2026.

***VIA U.S. MAIL***

*DEBTOR*
TODD A BROWN, JR.
7449 RUSKIN ROAD
PHILADELPHIA, PA 19151

***VIA ELECTRONIC NOTICE***

*DEBTORS ATTORNEY*
BRAD J. SADEK
SADEK LAW OFFICES, LLC
1500 JFK BOULEVARD
STE 220
PHILADELPHIA, PA 19102
BRAD@SADEKLAW.COM

*TRUSTEE*
KENNETH E. WEST
OFFICE OF THE CHAPTER 13 STANDING TRUSTEE
190 N. INDEPENDENCE MALL WEST
SUITE 701
PHILADELPHIA, PA 19106
ECFEMAILS@PH13TRUSTEE.COM

*U.S. TRUSTEE*
OFFICE OF UNITED STATES TRUSTEE
ROBERT N.C. NIX FEDERAL BUILDING
900 MARKET STREET
SUITE 320
PHILADELPHIA, PA 19107
USTPREGION03.PH.ECF@USDOJ.GOV

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
Josh.goldman@padgettlawgroup.com
*Counsel for Movant*

# NOTE

JUNE 29, 2017 — [Date]
HUNTINGDON VALLEY — [City]
PENNSYLVANIA — [State]

7449 RUSKIN ROAD, PHILADELPHIA, PENNSYLVANIA 19151
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 142,373.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is ATLANTIC BAY MORTGAGE GROUP LLC, A VIRGINIA LIMITED LIABILITY COMPANY . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on AUGUST 1, 2017 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on JULY 1, 2047 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO BOX 8546, VIRGINIA BEACH, VIRGINIA 23450

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 669.49 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;
(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;
(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;
(d) the Maturity Date as defined in this Note;

(e) the entry of any judgment against me under this Note; and
(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

______________________ (Seal) ______________________ (Seal)
TODD A BROWN JR -Borrower -Borrower

______________________ (Seal) ______________________ (Seal)
-Borrower -Borrower

______________________ (Seal) ______________________ (Seal)
-Borrower -Borrower

Loan Originator: DANIEL WEBB, NMLSR ID [redacted]
Loan Originator Organization: ATLANTIC BAY MORTGAGE GROUP, L.L.C., NMLSR ID [redacted]

*[Sign Original Only]*

# ALLONGE TO NOTE

LOAN #: [redacted]

LOAN AMOUNT: $142,373.00

PROPERTY ADDRESS: 7449 Ruskin Road, Philadelphia, PA 19151

ALLONGE TO NOTE DATED 6/29/2017

IN FAVOR OF Atlantic Bay Mortgage Group LLC,
A Virginia Limited Liability Company

AND EXECUTED BY Todd A Brown JR

PAY TO THE ORDER OF

WITHOUT RECOURSE **ATLANTIC BAY MORTGAGE GROUP LLC,
A VIRGINIA LIMITED LIABILITY COMPANY**

BY ______________________________

**BRIAN K HOLLAND, PRESIDENT**

**ATLANTIC BAY MORTGAGE GROUP LLC**

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

**Prepared By:**
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
Dallas, TX 75251
877-766-6677

[redacted] [Space Above This Line For Recording Data]

FHA Case No.: [redacted]

# LOAN MODIFICATION AGREEMENT

**(Providing for Fixed Interest Rate)**

This Loan Modification Agreement ("Agreement"), made this 7th day of February, 2025, between TODD A BROWN, JR, UNMARRIED, whose address is 7449 RUSKIN ROAD, PHILADELPHIA, Pennsylvania 19151 ("Borrower") and MCLP Asset Company, Inc. by Fay Servicing, LLC as Attorney in Fact, whose address is 5426 Bay Center Drive, Suite 300, Tampa, Florida 33609 ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated June 29th, 2017, recorded July 3rd, 2017, and recorded in Book/Liber N/A, Page N/A, Instrument No. 53233073, of the Official Records of PHILADELPHIA County, Pennsylvania, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 7449 RUSKIN ROAD, PHILADELPHIA, Pennsylvania 19151,

Original Loan Amount: $142,373.00

Loan No. [redacted]

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of April 1st, 2025, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $150,825.73, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 7.375%, from March 1st, 2025. Borrower promises to make monthly payments of principal and interest of U.S. $978.64, beginning on the 1st day of April, 2025, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 7.375% will remain in effect until principal and interest are paid in full. If on March 1st, 2065, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

Loan No.[redacted]

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

6. If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay

Loan No. [redacted]

directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

Loan No. [redacted]

02/14/25
Date

TODD A BROWN, JR (Seal) –Borrower

N/A (Seal) –Borrower
Date

N/A (Seal) –Borrower
Date

N/A (Seal) –Borrower
Date

## BORROWER ACKNOWLEDGMENT

State of Pennsylvania §
§
County of Delaware §

On this, the 14 day of February, 2025, before me Vincent A. Ricclone, the undersigned officer, personally appeared TODD A BROWN, JR

known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

(Seal)

Commonwealth of Pennsylvania - Notary Seal
Vincent A. Riccione, Notary Public
Delaware County
My Commission Expires June 20, 2025
Commission Number [redacted]

Notary Signature

Notary Public
Title of Officer

My Commission Expires: 06/20/2025

Loan No. [redacted]

Fay Servicing, LLC as Attorney in Fact
for MCLP Asset Company, Inc. –Lender

3/28/2025
-Date

By: Joshua Raeburn

Its: AVP Loss Mitigation

## LENDER ACKNOWLEDGMENT

State of Texas §
§
County of Dallas §

On this, the 28 day of March, 2025 before me Bruce H. Frieman, the undersigned officer, personally appeared Joshua Raeburn who acknowledged himself/herself to be the AVP Loss Mitigation of Fay Servicing, LLC as Attorney in Fact for MCLP Asset Company, Inc.

a entity, and that he/she as such Joshua Raeburn being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of said entity by himself/herself as AVP Loss Mitigation.

In witness whereof, I hereunto set my hand and official seal.

(Seal) BRUCE H. FRIEMAN
Notary Public, State of Texas
Comm. Expires 04-05-2027
Notary ID [redacted]

Notary Signature

Notary Public Bruce H. Frieman
Title of Officer
My Commission Expires: APR 0 5 2027

**"I, Joshua Raeburn, do hereby certify that the correct address of the within named Lender is 5426 Bay Center Drive, Suite 300, Tampa, Florida 33609. Witness my hand this 28 day of March, 2025."**

**Signed:**
**By:** Joshua Raeburn

**EXHIBIT "A"**

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, DESCRIBED ACCORDING TO A PLAN OF PROPERTY MADE BY EDMUND C. WRAY, REGISTERED ENGINEER, AS FOLLOWS, TO WIT:

SITUATE ON THE NORTHWESTERLY SIDE OF RUSKIN ROAD (FIFTY FEET WIDE) AT THE DISTANCE OF FOUR HUNDRED SIXTY ONE AND FOUR HUNDRED EIGHTY SIX ONE THOUSANDTHS FEET MEASURED SOUTHWARDLY FORTY FIVE DEGREES, ONE MINUTE WESTWARDLY FROM THE INTERSECTION OF THE NORTHWESTERLY SIDE OF RUSKIN ROAD AND THE SOUTHWESTERLY SIDE OF RUSKIN ROAD AND THE SOUTHWESTERLY SIDE OF HAVERFORD AVENUE (EIGHTY FEET WIDE), IN THE THIRTY FOURTH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID SIDE OF RUSKIN ROAD EIGHTEEN FEET AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH NORTHWESTWARDLY BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID RUSKIN ROAD, THE NORTHEAST AND SOUTHWEST LINES THEREOF PASSING THROUGH THE CENTER OF PARTY WALLS BETWEEN THIS PREMISES AND THE PREMISES ADJOINING ON THE NORTHEAST AND SOUTHWEST RESPECTIVELY, EIGHTY THREE FEET TO THE CENTERLINE OF A CERTAIN FIFTEEN FEET WIDE DRIVEWAY, WHICH EXTENDS SOUTHWESTWARDLY INTO CALLOWHILL STREET (SIXTY FEET WIDE) AND NORTHEASTWARDLY INTO HAVERFORD AVENUE.
TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE AFORESAID DRIVEWAY, AS AND FOR A DRIVEWAY, PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER IN COMMON WITH THE OWNERS, TENANTS AND OCCUPIERS OF THE OTHER LOTS OF GROUND BOUNDING THEREON AND ENTITLED TO THE USE THEREOF.
BEING KNOWN AS 7449 RUSKIN ROAD.
[redacted]

Loan No.[redacted]

**EXHIBIT "B"**

The Security Instrument executed by in favor of in the original principal sum of $142,373.00, dated June 29th, 2017, recorded on July 3rd, 2017, in Liber or Book N/A, Page N/A, Instrument No. 53233073, of the Official Records of PHILADELPHIA County, Pennsylvania.

The Security Instrument was previously modified by a Loan Modification Agreement dated October 27th, 2023, recorded on January 17th, 2024, in Liber or Book N/A, Page N/A, Instrument No. 54261596, of the Official Records of PHILADELPHIA County/Parish, Pennsylvania.

The Security Instrument was assigned as follows:
From N/A, to N/A, by assignment dated N/A, and recorded on N/A of the Official Records of PHILADELPHIA County, State of Pennsylvania in Book/Liber N/A, Page N/A, Instrument No. N/A.

From N/A to N/A, by assignment dated N/A, and recorded on N/A of the Official Records of PHILADELPHIA County, State of Pennsylvania in Liber or Book N/A, Page N/A, Instrument No. N/A.

From N/A, to N/A, by assignment dated N/A, and recorded on N/A of the Official Records of PHILADELPHIA County, State of Pennsylvania in Liber or Book N/A, Page N/A, Instrument No. N/A.

Loan No. [redacted]

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

2/14/2025
Date

TODD A BROWN, JR –Borrower

Date

–Borrower

Date

–Borrower

Date

– Borrower

Loan No.[redacted]

# CORRECTION AGREEMENT

**Borrower(s):** TODD A BROWN, JR

**Property:** 7449 RUSKIN ROAD, PHILADELPHIA, Pennsylvania 19151

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

**"Borrower"** is TODD A BROWN, JR.

**"Lender"** is MCLP Asset Company, Inc. by Fay Servicing, LLC as Attorney in Fact , and its successors or assigns.

**"Loan"** means the debt evidenced by the Note and all sums due under the Security Instrument.

**"Note"** means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.

**"Security Instrument"** means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $150,825.73 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

**REQUEST BY LENDER:** Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

2/14/2025
Date

TODD A BROWN, JR –Borrower

Date

–Borrower

Date

–Borrower

Date

– Borrower

Loan No. [redacted]

FEB 20 2025

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

2/14/2025
Date

TODD A BROWN, JR –Borrower

Date

–Borrower

Date

–Borrower

Date

– Borrower

[redacted]

This Instrument Prepared By:

After Recording Return To:
ATLANTIC BAY MORTGAGE GROUP LLC
596 LYNNHAVEN PARKWAY, SUITE 200
VIRGINIA BEACH, VIRGINIA 23452
Loan Number [redacted]

Uniform Parcel Identifier Number:
[redacted]
Property Address:
7449 RUSKIN ROAD
PHILADELPHIA, PENNSYLVANIA 19151

[Space Above This Line For Recording Data]

FHA Case No:
[redacted]

# MORTGAGE

MERS Phone: 888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated JUNE 29, 2017 , together with all Riders to this document.
**(B) "Borrower"** is TODD A BROWN JR, UNMARRIED

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing

under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. MERS telephone number is (888) 679-MERS.

**(D) "Lender"** is ATLANTIC BAY MORTGAGE GROUP LLC.

Lender is a VIRGINIA LIMITED LIABILITY COMPANY organized and existing under the laws of VIRGINIA. Lender's address is 596 LYNNHAVEN PARKWAY, SUITE 200, VIRGINIA BEACH, VIRGINIA 23452.

**(E) "Note"** means the promissory note signed by Borrower and dated JUNE 29, 2017. The Note states that Borrower owes Lender ONE HUNDRED FORTY-TWO THOUSAND THREE HUNDRED SEVENTY-THREE AND 00/100 Dollars (U.S. $ 142,373.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2047.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Planned Unit Development Rider
☐ Condominium Rider ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages

described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY of PHILADELPHIA :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION
[redacted]

which currently has the address of 7449 RUSKIN ROAD
[Street]
PHILADELPHIA , Pennsylvania 19151 ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from

making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the

basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible

levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be

lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate

information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest

of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co- signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated

notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees

incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or

removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence,

Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note. "Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;
(d) the Maturity Date as defined in the Note;
(e) the entry of any judgment against Borrower under the Note; and
(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_______________ (Seal)
TODD A BROWN JR -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

Witness: _______________

Witness: _______________

[Space Below This Line For Acknowledgment]

State of PENNSYLVANIA

County of Montgomery

On this the 29th day of JUNE, 2017, before me, Lynne Davis,

the undersigned officer, personally appeared TODD A BROWN JR,

known to me (or satisfactorily proven) to be the person whose name he

subscribed to the within instrument and acknowledged that he

executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

[signature]

Notary Public
Title of Officer

(Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
LYNNE DAVIS, Notary Public
Lower Moreland Twp., Montgomery County
My Commission Expires May 28, 2021

Loan Originator: DANIEL WEBB, NMLSR ID [redacted]
Loan Originator Organization: ATLANTIC BAY MORTGAGE GROUP, L.L.C., NMLSR ID [redacted]

**Certificate of Residence of Mortgagee**

The undersigned hereby certifies that: (i) he/she is the Mortgagee or the duly authorized attorney or agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is: 1901 E Voorhees Street, Suite C, Danville, IL 61834

Witness my hand this 29th day of June, 2017.

[signature]
Signature of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

Alana London
Type or Print Name of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

First American Title™

# Commitment for Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Exhibit A

[redacted]

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, described according to a Plan of property made by Edmund C. Wray, Registered Engineer, as follows, to wit:

SITUATE on the Northwesterly side of Ruskin Road (fifty feet wide) at the distance of four hundred sixty one and four hundred eighty six one thousandths feet measured Southwardly forty five degrees, one minute Westwardly from the intersection of the Northwesterly side of Ruskin Road and the Southwesterly side of Ruskin Road and the Southwesterly side of Haverford Avenue (eighty feet wide), in the Thirty Fourth Ward of the city of Philadelphia.

CONTAINING in front or breadth on the said side of Ruskin Road eighteen feet and extending of that width in length or depth Northwestwardly between parallel lines at right angles to the said Ruskin Road, the Northeast and Southwest lines thereof passing through the center of party walls between this premises and the premises adjoining on the Northeast and Southwest respectively, eighty three feet to the centerline of a certain fifteen feet wide driveway, which extends Southwestwardly into Callowhill Street (sixty feet wide) and Northeastwardly into Haverford Avenue.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway, as and for a driveway, passageway and watercourse at all times hereafter, forever in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

BEING known as 7449 Ruskin Road.

[redacted]

BEING the same premises which Stephen N. Massi and Arlene S. Massi f/k/a Arlene S. Pestrak, his wife, by Deed dated 11/24/1998 and recorded 11/27/1998 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Deed Book JTD 864, Page 127, granted and conveyed unto Phyllis McNeil Rice.

AND the said Phyllis McNeil Rice is also known as Phyllis McNeil-Wallace.

eRecorded in Philadelphia PA Doc Id: [redacted]
03/25/2019 02:57 PM Page 1 of 3 Rec Fee: $224.75
Receipt#: [redacted]
Records Department Doc Code: A

McCabe Weisberg & Conway, LLC
Suite 1400
123 South Broad Street
Philadelphia, PA 19109

Record and Return To:
McCabe Weisberg & Conway, LLC
Suite 1400
123 South Broad Street
Philadelphia, PA 19109
Attn: Ray Purnell

## Assignment of Mortgage

[redacted] **MERS Phone #:1-888-679-6377**

For good and valuable consideration received, the undersigned holder of a mortgage, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR ATLANTIC BAY MORTGAGE GROUP LLC, ITS SUCCESSORS AND ASSIGNS**, whose address is 1901 E. Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, Michigan 48501-2026, hereby grants, assigns, transfers and conveys without warranties and without recourse, unto **ATLANTIC BAY MORTGAGE GROUP, LLC.**, whose address is 596 Lynnhaven Parkway, Ste. 200, Virginia Beach, VA 23452, the mortgage dated **June 29, 2017**, executed by **Todd A. Brown, Jr., unmarried** securing the principal of **$142,373.00**, recorded on **July 3, 2017**, as **Instrument Number: 53233073** in the Office of the Recorder of Deeds for **Philadelphia** County, Commonwealth of Pennsylvania, along with all rights accrued or to accrue under said Mortgage.

The property encumbered by the Mortgage is located in Philadelphia County, Commonwealth of Pennsylvania, known as and located at **7449 Ruskin Road, Philadelphia, PA 19151**, as described in the following legal description:

SEE ATTACHED LEGAL DESCRIPTION
[redacted]

Assignee certifies that the precise address of **Atlantic Bay Mortgage Group, LLC**, is 596 Lynnhaven Parkway, Ste. 200, Virginia Beach, VA 23452.

Attested by: Ashley N. Rouse

Name/Position: **ASHLEY N. ROUSE** / Assistant Secretary

TO HAVE AND TO HOLD, Assignee, its successors and assigns, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on MARCH 20, 2019.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR ATLANTIC BAY MORTGAGE GROUP LLC, ITS SUCCESSORS AND ASSIGNS**

Signature: Linda Brown

Name: LINDA BROWN

Title: Assistant Secretary

Date: MARCH 20, 2019

**FORM OF CORPORATE ACKNOWLEDGMENT**

State of Virginia

) SS:

City of Virginia Beach

On this 20 day of March, 20 19, before me the undersigned officer, personally appeared Linda Brown who acknowledged himself or herself to be the Assistant Secretary of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR ATLANTIC BAY MORTGAGE GROUP LLC, ITS SUCCESSORS AND ASSIGNS**, and that he or she as such Assistant Secretary, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself or herself as Assistant Secretary

In witness whereof, I here unto set my hand and official seal.

Brunilda Velazquez

NOTARY PUBLIC

BRUNILDA VELAZQUEZ

BRUNILDA VELAZQUEZ
Notary Public
Commonwealth of Virginia
Registration No. [redacted]
My Commission Expires June 30, 2022

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, described according to a Plan of property made by Edmund C. Wray, Registered Engineer, as follows, to wit:

SITUATE on the Northwesterly side of Ruskin Road (fifty feet wide) at the distance of four hundred sixty one and four hundred eighty six one thousandths feet measured Southwardly forty five degrees, one minute Westwardly from the intersection of the Northwesterly side of Ruskin Road and the Southwesterly side of Ruskin Road and the Southwesterly side of Haverford Avenue (eighty feet wide), in the Thirty Fourth Ward of the city of Philadelphia.

CONTAINING in front or breadth on the said side of Ruskin Road eighteen feet and extending of that width in length or depth Northwestwardly between parallel lines at right angles to the said Ruskin Road, the Northeast and Southwest lines thereof passing through the center of party walls between this premises and the premises adjoining on the Northeast and Southwest respectively, eighty three feet to the centerline of a certain fifteen feet wide driveway, which extends Southwestwardly into Callowhill Street (sixty feet wide) and Northeastwardly into Haverford Avenue.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway, as and for a driveway, passageway and watercourse at all times hereafter, forever in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

BEING known as 7449 Ruskin Road.

[redacted]

Recorded in Philadelphia PA Doc Id: [redacted]
03/03/2022 03:40 PM Page 1 of 3 Rec Fee: $224.75
Receipt: [redacted]
Records Department Doc Code: A

**PENNSYLVANIA**
COUNTY OF **PHILADELPHIA**
LOAN NO. [redacted]

[redacted]
WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. 208-528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **ATLANTIC BAY MORTGAGE GROUP, LLC** located at **596 LYNNHAVEN PARKWAY SUITE 200, VIRGINIA BEACH, VA 23452**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **MCLP ASSET COMPANY, INC** located at **2001 ROSS AVENUE SUITE 2800, DALLAS, TX 75201**, Assignee, its successors and assigns, that certain Mortgage dated **JUNE 29, 2017** executed by **TODD A BROWN JR, UNMARRIED**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ATLANTIC BAY MORTGAGE GROUP LLC, ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, in the amount of **$142,373.00** and recorded on **JULY 03, 2017** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **53233073**, more particularly described and commonly known as:

**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **7449 RUSKIN ROAD, PHILADELPHIA, PA 19151**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on Feb. 18, 2022.

**ATLANTIC BAY MORTGAGE GROUP, LLC**

Name: Brian Holland
Title: CEO

STATE OF Virginia
~~COUNTY~~ City OF Virginia Beach ) ss.

On Feb 18, 2022, before me, Tina Marie Fleck personally appeared Brian Holland known to me to be the CEO of **ATLANTIC BAY MORTGAGE GROUP, LLC** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

tina marie fleck
7392356 (COMMISSION EXP.
(Aug 31, 2023)
NOTARY PUBLIC

TINA MARIE FLECK
NOTARY PUBLIC
REG # [redacted]
COMMISSION EXPIRES 8/31/2023
COMMONWEALTH OF VIRGINIA

[redacted]

[redacted]



**MERS PHONE: 1-888-679-6377**

I do hereby certify that the precise address of the Assignee Residence is:
**MCLP ASSET COMPANY, INC, 2001 ROSS AVENUE SUITE 2600, DALLAS, TX 75201**

**Name:** Brian Holland
**Title:** CEO of Atlantic Bay Mortgage Group, LLC

[redacted] BROWN

LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, described according to a Plan of property made by Edmund C. Wray, Registered Engineer, as follows, to wit:

SITUATE on the Northwesterly side of Ruskin Road (fifty feet wide) at the distance of four hundred sixty one and four hundred eighty six one thousandths feet measured Southwardly forty five degrees, one minute Westwardly from the intersection of the Northwesterly side of Ruskin Road and the Southwesterly side of Ruskin Road and the Southwesterly side of Haverford Avenue (eighty feet wide), in the Thirty Fourth Ward of the city of Philadelphia.

CONTAINING in front or breadth on the said side of Ruskin Road eighteen feet and extending of that width in length or depth Northwestwardly between parallel lines at right angles to the said Ruskin Road, the Northeast and Southwest lines thereof passing through the center of party walls between this premises and the premises adjoining on the Northeast and Southwest respectively, eighty three feet to the centerline of a certain fifteen feet wide driveway, which extends Southwestwardly into Callowhill Street (sixty feet wide) and Northeastwardly into Haverford Avenue.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway, as and for a driveway, passageway and watercourse at all times hereafter, forever in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

BEING known as 7449 Ruskin Road.

[redacted]